

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 30, 2022

**<u>BY ECF AND EMAIL</u>**

The Honorable Jed S. Rakoff
United States District Judge
500 Pearl Street
Southern District of New York§
New York, New York 10007

    Re:    *United States v. William Erdogan*, 22 Cr. 33 (JSR)

Dear Judge Rakoff:

    The Government respectfully submits this letter in advance of the September 6, 2022 sentencing of defendant William Erdogan. A four-count Indictment was filed on January 18, 2022, charging the defendant with narcotics trafficking and use of a firearm in connection with a narcotics offense. On May 16, 2022, the defendant pleaded guilty pursuant to a plea agreement to Count Three of the Indictment, which charged him with distributing and possessing with intent to distribute 40 grams and more of fentanyl, in violation of § 841(b)(1)(B). Pursuant to the plea agreement, the defendant's Stipulated Guidelines Range is 92 to 115 months' imprisonment, while the defendant's Presentence Investigation Report ("PSR") calculates the defendant's Guidelines range as 84 to 105 months' imprisonment. Because the defendant's conduct represents a serious threat to the safety of the community, a significant term of incarceration is appropriate. However, due to the defendant's personal characteristics and because the defendant immediately accepted responsibility upon arrest, a below-Guidelines sentence not less than the 72 months' imprisonment recommended by Probation is warranted.

    **I.**    **The Offense Conduct**

    Between July 1, 2021 and July 20, 2021, the defendant sold an undercover NYPD officer heroin mixed with fentanyl on three occasions. During the course of one of the sales, the defendant sold the undercover officer a semi-automatic pistol.

    Specifically, on June 30, 2021, the defendant discussed selling the undercover officer heroin and a gun. The defendant agreed to sell the undercover officer 100 grams of heroin for $6,500 the following day. The defendant told the undercover officer that he needed to hold on to the gun for "protection," but told the undercover officer that he would be willing to sell the gun at a later date.

    The following day, July 1, 2021, the defendant and the undercover officer met in Manhattan. The undercover officer entered the defendant's car and immediately saw that the defendant had a Ruger Tec-9-style semi-automatic pistol on his lap. The defendant handed the undercover officer a Ziplock baggie containing approximately 100 grams of a substance that later

tested positive for heroin, fentanyl, and para-flurofentanyl. In exchange, the undercover officer handed the defendant $6,500 and told the defendant that he had $1,000 to buy the gun from the defendant. The defendant countered, asking for $1,300. The undercover officer told the defendant that he only had $1,000, but agreed to provide the defendant with an additional $300 during their next transaction. The defendant agreed, and took the magazine out of the gun, removed a bullet from the chamber of the gun, and handed the undercover officer the gun, the magazine, and the bullet.

Subsequently, on July 7, 2021, the defendant and the undercover officer met again in Manhattan, at which time the defendant sold the undercover officer 100 grams of a substance that tested positive for heroin and fentanyl. The undercover officer paid the defendant $6,500 for the drugs, and the remaining $300 from the sale of the gun. The defendant and the undercover officer also discussed the defendant selling the undercover officer 500 grams of heroin for $30,000.

Finally, after discussing the sale of 500 grams of heroin to the undercover officer, the defendant drove to Manhattan on July 20, 2021 to complete the transaction. Law enforcement officers arrested the defendant when he arrived at the meeting location. When he was arrested, the defendant had in his possession two Ziplock baggies that weighed approximately 509 grams and contained heroin and fentanyl.

The defendant was presented before the Honorable Katharine H. Parker on July 21, 2021, after which he was remanded. The defendant has been in custody since then.

## II.     The Plea, the Applicable Guidelines Range, and the PSR

On May 16, 2022, the defendant pleaded guilty, pursuant to a plea agreement, to Count Three of the Indictment, which charged the defendant with narcotics possession and distribution related to the July 1, 2021 drug sale. In the plea agreement, the parties agreed that the defendant's offense level is 23 and his criminal history category is VI. Accordingly, the plea agreement calculated the defendant's Stipulated Guidelines Range as 92 to 115 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment.

In the PSR dated August 5, 2022, the Probation Office arrived at the same calculation with respect to the defendant's offense level, but concluded that the defendant was in criminal history category V because the defendant was not on parole at the time he committed the instant offense. Therefore, the PSR calculates the applicable Guidelines range as 84 to 105 months' imprisonment.[1] Probation recommended a variance based on the factors set out in 18 U.S.C. § 3553(a) of 72 months' imprisonment.

In his sentencing submission, the defendant asks the Court for the mandatory minimum sentence of 60 months' imprisonment.

## III.    Discussion

---

[1] The Government acknowledges that the applicable Guidelines range calculated in the PSR is correct.

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### B. A Significant Sentence is Appropriate in this Case

The Government submits that a significant sentence, albeit one below the applicable Guidelines range, appropriately reflects the nature and circumstances of the offense as well as the history and characteristics of the defendant; appropriately provides specific and general deterrence; and promotes respect for the law. Specifically, the Government respectfully submits that a

sentence of at least the 72 months' imprisonment recommended by Probation is appropriate in this case.

A significant term of imprisonment would appropriately reflect the nature and seriousness of the defendant's conduct and protect the public. The defendant's conduct was exceedingly dangerous and a serious violation of the laws in this country. In particular, the defendant's trafficking of heroin and fentanyl—in substantial quantities—was both dangerous and reckless, as this lethal combination has led to a significant number of overdose deaths in the United States. Moreover, the defendant's dangerous conduct was made even more risky by the defendant carrying a loaded firearm to a drug deal. Through the sale of drugs and a gun, the defendant's dangerous and violent conduct easily could have led to injury and death.

Additionally, a significant term of imprisonment is both sufficient and necessary to afford adequate deterrence to the defendant and promote respect for the law. Despite the defendant's relative youth, the instant offense is the defendant's twelfth conviction. The defendant's convictions include assault, burglary, and drug possession. The defendant's escalating criminal history calls into question the defendant's willingness to comply with the law, court orders, and future supervision. A significant sentence provides both specific deterrence with respect to the defendant, and also warns others currently engaged in or thinking about engaging in drug and gun trafficking that such conduct will be met with significant consequences.

Nevertheless, the Government acknowledges the challenges that the defendant faced throughout childhood as set out in the PSR. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Accordingly, a below-Guidelines sentence—but not one under the 72 months' imprisonment recommended by Probation—appropriately reflects the defendant's history and characteristics.

## IV.   Conclusion

For the reasons set forth above, the Court should impose a significant term of incarceration not less than the 72 months' imprisonment recommended by Probation.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/
Christy Slavik
Assistant United States Attorney
(212) 637-1113

cc:   Counsel (by ECF)